## THRESHER v. GREGORY et al.

### No. 18,421; November 5, 1895.

#### 42 Pac. 421.

**Sale—Measurement of Fruit—Evidence.**—In an action for the price of peaches sold on a contract fixing the price per pound for each of several sizes of fruit "per box packed," where no method of measurement is provided, evidence of prior negotiations between the parties, out of which the contract grew, is admissible. In such action, where defendant contended that the size and weight of the boxes determined the size and weight of the fruit, an experienced fruit raiser and packer, who saw plaintiff's fruit packed, could testify that peaches could not be graded in that way, as they were packed in "break joints," by placing the upper layer in the space between the fruit in the lower layer; and he could also testify as to the average size of plaintiff's fruit, and the average weight of the several sizes as packed.

**Sale—Measurement of Fruit.**—In an Action for the Price of fruit sold on a contract which merely fixed the price per pound for each of several sizes of fruit packed, correspondence subsequent to the contract, showing that the method of measuring the fruit had not been agreed on, is admissible on the issue as to measurement. Where, in such a case, defendant testifies that the contract with plaintiff is his usual form of contract, he may be asked on cross-examination to write out a contract in his usual form, and such contract may be put in evidence.

**Sale—Measurement of Fruit.**—Where, in an Action for the Price of peaches under a contract fixing the price according to the size and weight of the fruit, there is a disagreement as to the method of measurement, and defendant testifies that measuring-boards like those used by plaintiff injured the fruit, and rendered it unfit for shipping, plaintiff may, in rebuttal, testify that he had seen defendant and others use such boards, and then use the fruit.

APPEAL from Superior Court, Sacramento County; Matt F. Johnson, Judge.

Action by C. W. Thresher against Gregory Bros. & Co. for the purchase price of peaches. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Johnson & Johnson for appellants; Holl & Dunn for respondent.

BELCHER, C.—The plaintiff brought this action to recover the sum of $376.65, balance alleged to be due for peaches sold and delivered by him to defendants in 1892, and also to recover the further sum of $332.95, balance alleged to be due for peaches sold and delivered by George and P. B. Thresher to defendants in 1892, and by the sellers assigned to plaintiff. The defendants, by their answer, admit the purchase of the peaches, but aver that the balance remaining due and unpaid to plaintiff for his peaches is only $22.40, and that the balance remaining due and unpaid to plaintiff's assignors for their peaches is only $77.90, and they offer to allow judgment to be taken against them for the aggregate of these amounts. The case was tried by the court without a jury, and the findings were that for the peaches purchased of plaintiff there was still due and unpaid the sum of $174.86, and for the peaches purchased of plaintiff's assignors there was still due and unpaid the sum of $172.20, and that plaintiff was entitled to judgment for the aggregate of these sums, $347.06, with legal interest thereon from September 30, 1892, until the rendition of the judgment. Judgment was accordingly so entered, from which, and from an order denying a new trial, defendants appeal.

The contracts between the parties were in writing. Defendants agreed with plaintiff to pay him for his fruit the following prices: ''One and one-half cents per pound for two and one-quarter to two and one-half inch fruit, and one and three-quarters cents per pound for two and one-half to three inch fruit, and two cents per pound for all above three inches, per box, packed.'' A similar contract was made with plaintiff's assignors. The fruit was packed by experienced packers, and in boxes furnished by defendants. There was no dispute as to the number of boxes delivered, but the controversy between the parties was as to the method of determining the sizes of the fruit. The defendants claimed that a four-inch

box should be deemed to contain two-inch peaches, and a five-inch box two and one-half inch peaches, and so on; and the plaintiff claimed that such boxes would contain peaches of larger sizes than those named. The court found: "That the contracts do not provide by what method the size of the fruit shall be determined, or how the fruit shall be measured to ascertain the quantity of each size specified in the contract. That there was no agreement at any time between the parties as to how the fruit should be measured, or as to how the size of fruit should be determined, or as to how the fruit should be graded, so as to ascertain the quantity of fruit of each size stated in the contract delivered to the defendants. That the size of the boxes used in packing the fruit will not determine and fix the size of the fruit packed in the boxes as fruit of the size of one-half the depth of the boxes in which it is packed. That all of this fruit was packed by what is known as 'broken joints'; that is, so that each peach in the upper layer would rest between peaches in the lower layer, and so as to touch on two or three, and sometimes four, peaches in the lower layer. That all the fruit was packed with two layers to the box, and that two layers of peaches two and one-half inches in size could be, and often were, packed in the four and one-half inch boxes. That all the fruit in the four and one-half inch boxes was fruit from two and one-quarter to two and one-half, and including fruit two and one-half, inches in size. That all of this fruit was packed by experienced packers in the employ of the defendants. That a large number of the five-inch boxes, by reason of the size of the fruit packed in them, were what is known as 'cleated'—that is, a strip of wood varying from three-eighths to one-fourth inches in thickness was placed under the ends of the covers to the boxes so as to raise the covers the thickness of such cleats, and thereby increase the space inside the boxes, from the bottom to the cover, from five inches to five and three-eighths or five and one-quarter inches—and that in such boxes two layers of peaches over three inches in size could be and were packed, and that a number of five-inch boxes, after being packed, were double cleated —that is, two cleats were placed under each end of the cover so as to increase the depth of the boxes between the cover and the bottom; but I cannot tell from the evidence how many of the five-inch boxes were single cleated and how many were double cleated, and I cannot, therefore, fix the amount of fruit

delivered to and received by the defendants that was over three inches in size. But I find that all the fruit in the five-inch boxes, whether cleated or not, was over two and one-half inches in size." Counsel for appellants make no point as to the insufficiency of the evidence to justify the findings, but insist that numerous errors in law were committed by the court during the trial which call for a reversal.

The first point made is that the court erred in overruling objections to questions propounded to the witness E. J. Gregory on cross-examination. The witness, on his direct examination, had testified very fully as to the negotiations between the parties prior to the making of the written contracts, and had said: "In these contracts the size of the boxes was to determine the size of the fruit"; that "it was then determined between us that a four and one-half inch box would represent two and one-fourth inch fruit; a five-inch box would determine the size of the peaches to be two and one-half inches, and a six-inch box would determine the size to be three inches"; and that was what "per box packed" meant in the contract. And again: "We agreed with the Threshers that the size of the boxes would grade the fruit, because it is the custom and the experience, and because we have never done anything different before." The questions objected to were as to the prior negotiations, and the objections were that they were irrelevant, immaterial, incompetent and not cross-examination, and that the matters sought to be elicited were merged in the written contract. There was no controversy as to the prices to be paid for the fruit when its sizes were ascertained, but the question was as to how its sizes were to be determined. Upon this question the written contract was silent, and evidence to overcome the theory of appellants that the size of the boxes would determine the size of the fruit was admissible. The rule invoked by appellants that, when the terms of an agreement have been reduced to writing, "no evidence of the terms of the agreement other than the contents of the writing" can be given (section 1856, Code of Civil Procedure), is not in point. We conclude, therefore, that the court did not commit any prejudicial error in allowing the cross-examination complained of.

The next point made is that the court erred in overruling objections to certain questions put to T. B. Hutchinson, a witness called for plaintiff. The witness had a fruit ranch which

was separated from the plaintiff's ranch only by the Feather river, and had a similar contract with defendants for the sale of his fruit. He testified that he had been in the business twelve years, and had had experience in packing fruit for shipping and other purposes, and that he did not think one could grade fruit by the size of the box, and be able to tell the size of the fruit in the box. He was asked to explain why, and said: "Well, in packing peaches they pack what we call 'break joints'; that is, they put peaches of the upper layer in the spaces between peaches in the lower layer. So you can put larger than two layers of two-inch peaches in a four-inch box, and you can put larger than two layers of two and one-half inch peaches in a five-inch box. That is the usual way of packing peaches." He also said that he was present at plaintiff's place, and saw the packing, and that it was done that way right along. He further said that he was at plaintiff's orchard during the packing season, and saw his peaches, and that he measured his own peaches frequently during the season, for the purpose of ascertaining what size they were running, and what he should receive for them. He was then asked if, from the grading of his own orchard, he could tell in reference to the size of plaintiff's peaches, and again, as to what would be the average weight of four and one-half inch boxes of freestones, and if he knew the average weight in that neighborhood of clingstones that season. These questions were objected to as irrelevant, immaterial, and incompetent, and the objections were overruled. It is admitted that his was expert testimony, but it is claimed that it was incompetent, because the weight of the peaches in controversy was capable of actual demonstration. It was evidently offered to overcome the defendants' theory that the size and weight of the boxes conclusively determined the size and weight of the fruit, and for this purpose we think it admissible. The witness also, in answer to a question put to him, said: "E. J. Gregory said to me he made the contract, and said he never saw such a fool contract." Counsel for defendants moved to strike out the answer, and the motion was denied. When E. J. Gregory was on the stand as a witness for defendants he admitted that he "said something about the contract being a 'fool' contract." Conceding, then, that the objections to the answer were well taken, still we fail to see that defendants could have been prejudiced in any way by the ruling.

The plaintiff offered in evidence two letters, and they were admitted over the objections of defendants. The first was from defendants to plaintiff, dated August 10th, and stating that they were paying others in his section thirty-five cents per box for peaches, and asking if that price would be satisfactory to him. The second was a reply by plaintiff, stating that the price named was not satisfactory, and that nothing less than thirty cents for a four-inch box, thirty-five cents for a four and one-half inch box and forty cents for a five-inch box would satisfy him. It is evident from these letters that the written contract was not regarded by the parties as fixing the method by which the grade and weight of the fruit were to be determined, and that that was left an open question for subsequent settlement. It was proper, therefore, to admit the letters in evidence to show the understanding of the parties, and the necessity for some agreement upon the question in controversy.

Complaint is made that the court refused to permit the defendants to show the size of the fruit in neighboring orchards, as plaintiff had been permitted to do. But the question objected to was not as to the size of the fruit in neighboring orchards, but "What was the average size of boxes used at all these points?" The points referred to were Chico and other places many miles away. Obviously, the answer to the question would in no way have helped to solve the question in hand, and it was therefore properly excluded.

On his direct examination the witness E. J. Gregory testified that the contract with plaintiff was exactly the same form of contract that had been used by defendants for twenty years; that there was no other method of grading the fruit agreed upon; and that the method claimed by him was what the words "per box packed" in the contract meant. On his cross-examination the witness was asked about the usual contracts made by defendants, and to then and there write out a specimen of them. He then wrote out a contract and the plaintiff offered it in evidence. It stated that the seller sold to Gregory Bros. Co., and that Gregory Bros. Co. bought of the seller, "all his present crop of sound, merchantable, shipping peaches now in bearing in his orchard, at the agreed price of thirty cents per box packed." All this evidence was

admitted over the objections of defendants that it was irrelevant, and not proper cross-examination; but, in our opinion, the rulings were obviously correct. Several other questions put to the witness Gregory on cross-examination were objected to, and the objections overruled. These rulings are assigned as errors, but they, too, were, in our opinion, so clearly correct that no special notice of them is required.

E. A. Light was called as a witness for plaintiff in rebuttal, and testified that he worked for Hutchinson between July and October, 1892, and was his foreman; that he knew about the packing on Hutchinson's place, and that two and three-quarters inch fruit was put in four and one-half inch boxes, but that he did not know how they packed at Thresher's. He was asked if he weighed any fruit from Hutchinson's place, and, over the objection of defendants, was permitted to answer that he weighed most of it, and then to state what the average weight was. It is claimed that this testimony was incompetent, and was prejudicial to defendants. But it had already been proved that the ranches were separated only by a river; that the fruit on the Hutchinson ranch was sold to defendants under a similar contract, was packed by the same packers, in the same sized boxes, and was the same variety of fruit. Under these circumstances the testimony objected to would seem to have been clearly admissible to show what was the probable weight of the boxes packed on plaintiff's ranch. The defendant E. J. Gregory and other witnesses for defendants had given evidence tending to show that measuring-boards, like those used by the Threshers, were never used to measure fruit to ascertain its size, and that to use such boards would bruise and injure the fruit, and make it unfit for shipping purposes. In rebuttal George Thresher was allowed, over the objection of defendants, to testify that he had seen defendants' own packers use such boards to measure some of the fruit, and then use the fruit; and also had seen such boards used in other orchards and in canneries. The testimony was competent and admissible for the purposes for which it was offered, and we see no error in the action of the court admitting it.

The above are all the points which require special notice. We conclude that the evidence was sufficient to justify the

findings of the court, and that no prejudicial error was committed in any of its rulings. The judgment and order appealed from should be affirmed.

We concur: Britt, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.